IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KENYA BROWN, | ) |
| PLAINTIFF, | ) CASE NO. |
| vs. | ) |
| | ) HON. |
| BENTON TOWNSHIP HOUSING COMMISSION, a public housing authority | ) |
| DEFENDANT. | ) |

## COMPLAINT

PLAINTIFF, KENYA BROWN, by and through her attorneys, Carla D. Aikens, P.L.C., submits the following Complaint and Demand for Trial by Jury against Defendant BENTON TOWNSHIP HOUSING COMMISSION.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, PLAINTIFF Kenya Brown was a resident of Berrien County in the State of Michigan.

2. Defendant Benton Township Housing Commission ("BTHC") is a public housing authority located at 1216 Blossom Lane, Benton Harbor, Michigan.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, *et. seq*.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over

1

Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Western District of Michigan pursuant to 28 U.S. Code § 1391, because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff began working for Defendant in October 2012, however, was later promoted in 2017 to the office as a public housing assistant.

7. Plaintiff was successful at her job and earned multiple promotions and raises throughout her tenure with Defendant.

8. Plaintiff received certifications in rent calculations and cyber awareness training and performed her job duties competently.

9. In 2023 Plaintiff began consistently raising concerns about an improper relationship and the conflict of interest related to this improper relationship between management and maintenance operations and the conflict of interest that resulted.

10. In response, Plaintiff was accused of engaging in a sexual relationship of her own with the same individual, an accusation that she vehemently denied.

11. After this complaint, Plaintiff was subjected to worsening treatment, retaliation, and exclusion from job responsibilities by the manager who she reported for the improper relationship as well as the human resources management manager she reported this to.

12. Because of her complaint, Plaintiff was subjected to unfair working conditions, missed promotion opportunities, and regular harassment, including comments regarding her race/color.

13. For example, the operations manager called Plaintiff a "bitch" on multiple occasions.

14. For another example, the same operations manager referred to Plaintiff as a "Hi-yellow bitch" as a disparaging term related to her color, race, and gender.

15. Besides the hostile and derogatory comments, Plaintiff was also isolated from management from that point onward.

16. As a result of the unfair treatment and hostility, Plaintiff reported the treatment on multiple occasions to human resources, the board of directors, the president of the board, and even attending open board meetings.

17. Plaintiff further raised concerns related to improper and potentially illegal conduct within the Housing Commission related to payment for work that was not completed.

18. Plaintiff faced retaliatory treatment because of these reports culminating in her termination.

19. Shortly after one of her reports to the board related to her treatment, Plaintiff was summoned to meet with the Executive Director and the Housing Commission's attorney.

20. Plaintiff was questioned regarding alleged communications with residents.

21. Plaintiff explained that she had referred residents to an outside program unrelated to Defendant and denied any wrongdoing.

22. Plaintiff was immediately placed on paid suspension and then terminated effective April 29, 2025.

23. The stated reason for termination was a complaint regarding her referral of residents to another program.

24. The proffered reason for termination was false and pretextual.

25. Plaintiff's termination occurred shortly after her repeated complaints about management misconduct and discriminatory treatment.

26. Similarly situated employees who engaged in comparable or more serious conduct were not terminated.

27. Defendant's actions were motivated by race, color, sex, and retaliation for protected activity.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF RACE AND COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e et seq. ("Title VII")**

28. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

29. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

30. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or color.

31. Plaintiff is an African American woman and, as a result, is a member of a protected class pursuant to Title VII.

32. Plaintiff was subjected to offensive communication, disparate treatment, and discriminatory conduct on the basis of her membership in this protected class.

33. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

34. The unwelcome conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and offensive work environment as alleged in the statement of facts.

35. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered

losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

36. As a result of those actions and consequent harms, Plaintiff has suffered damages in an amount to be proven at trial.

37. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT II**
**DISCRIMINATION ON THE BASIS OF RACE AND COLOR IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

38. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

39. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

40. Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

41. Plaintiff is an African American female and, as a result, is a member of a protected class pursuant to ELCRA.

42. Plaintiff was subjected to offensive communication, disparate treatment, and discriminatory conduct on the basis of her membership in this protected class.

43. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

44. The unwelcome conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and offensive work environment as alleged in the statement of facts.

45. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered

mental anguish, emotional distress, humiliation, embarrassment, and loss of professional reputation.

46. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

47. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

48. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

49. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

50. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to retaliate against an employee for engaging in protected activity.

51. Plaintiff engaged in protected activity, including but not limited to reporting discriminatory and harassing conduct to Defendant's management, HR, the board of directors, and the president of the board directly.

52. Defendant, through its agents, had knowledge that Plaintiff engaged in protected activity because he spoke directly with them and submitted internal complaints.

53. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, culminating in her termination.

54. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

55. Plaintiff notified Defendant and its agents of the unwelcome conduct and

retaliation; however, Defendant failed to remedy the same.

56. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

57. As a result of those actions and consequent harms, Plaintiff has suffered damages in an amount to be proved at trial.

58. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ELCRA

59. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

60. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

61. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

62. Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

63. Plaintiff engaged in protected activity, including but not limited to reporting discriminatory and harassing conduct to Defendant's management, HR, the board of directors, and the president of the board directly.

64. Defendant, through its agents, had knowledge that Plaintiff engaged in protected activity because he communicated directly with them.

65. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against her, culminating into her termination.

66. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

67. Plaintiff notified Defendant and its agents of the unwelcome conduct and retaliation; however, Defendant failed to remedy the same.

68. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

69. As a result of those actions and consequent harms, Plaintiff has suffered damages in an amount to be proved at trial.

## COUNT VI
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII (SEX, GENDER, RACE, & RETALIATION)

70. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

71. Plaintiff was subjected to repeated and pervasive harassment and mistreatment by supervisors and managers based on race, sex, and retaliation constituting a hostile work environment under Title VII.

72. The harassment was unwelcome, offensive, and severe and/or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

73. Plaintiff made repeated complaints to supervisors, HR, and management, but Defendant failed to take appropriate action to stop the harassment.

74. Defendant knew or should have known about the hostile work environment and failed to take immediate and appropriate corrective action.

75. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered the

damages described above.

76. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF ELCRA (SEX, GENDER, RACE, & RETALIATION)

77. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

78. Plaintiff was subjected to repeated and pervasive harassment and mistreatment by supervisors and managers based on race, gender, color, and retaliation constituting a hostile work environment under ELCRA.

79. The harassment was unwelcome, offensive, and severe and/or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

80. Plaintiff made repeated complaints to supervisors, HR, management, and the board of directors but Defendant failed to take appropriate action to stop the harassment.

81. Defendant knew or should have known about the hostile work environment and failed to take immediate and appropriate corrective action.

82. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered the damages described above.

83. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII
### WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

84. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

9

85. It is the longstanding public policy of the State of Michigan that there are exceptions to the employment at-will doctrine, and an employer can be found liable for wrongful discharge when:

   a. explicit legislative statements prohibit discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty;
   b. the alleged reason for the discharge was the employee's refusal to violate the law in the course of employment; or
   c. the discharge was based on the employee's exercise of a right conferred by a well-established legislative enactment.

86. Plaintiff was terminated in retaliation for, at least in part, reporting potential fraudulent payments and informing tenants of their statutory rights related to eviction.

87. As a result of Defendant's actions and consequent harms, Plaintiff has suffered damages in an amount to be proven at trial.

88. Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, Kenya Brown, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: March 3, 2026

Respectfully Submitted,

C<span style="font-variant:small-caps">ARLA</span> D. A<span style="font-variant:small-caps">IKENS</span>, P.L.C.

<u>/s/ *Connor B. Gallagher*</u>
Connor B. Gallagher (P82104)
615 Griswold St., Ste. 709
Detroit, MI 48226
connor@aikenslawfirm.com
*Attorneys for Plaintiff*